IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Silvester Duenez, ) | C/A No.: 3:20-972-MGL-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Tidewater Boats, LLC, James E. ) | ORDER |
| Metts, Jr., Christopher Martin, ) | |
| and Richard Correll, ) | |
| ) | |
| Defendants. ) | |
| ) | |

In this employment discrimination case, Silvester Duenez ("Plaintiff") sues his former employer Tidewater Boats, LLC ("Tidewater"), as well as the following owners and managers of Tidewater: James E. Metts, Jr., Christopher Martin, and Richard Correll (collectively "Defendants"). Plaintiff brings this action alleging race discrimination against Defendants pursuant to 42 U.S.C. § 1981 (claims 1–3) and race and national original discrimination against Tidewater pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (claims 4–6). [*See* ECF No. 32].

This matter comes before the court on Defendants' motion to quash and/or for protective order [ECF No. 51] and Plaintiff's motion for reconsideration of the court's order denying his motion to amend the complaint to add class claims and a claim for wrongful termination in violation of public policy ("wrongful termination claim"). [ECF No. 63]. The

motions have been fully briefed [ECF Nos. 64, 70, 71, 72] and are ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.), this case has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned denies Plaintiff's motion and grants Defendants' motion.

I.     Factual and Procedural Background

Plaintiff filed his original complaint on March 9, 2020, including a claim for wrongful termination in violation of public policy. [*See* ECF No. 1]. Plaintiff filed his first amended complaint on June 29, 2020, that, in part, removed the claim for wrongful termination. [*See* ECF No. 10]. On July 20, 2020, the court granted the parties' consent motion for Plaintiff to file a second amended complaint ("SAC"). [ECF Nos. 13, 14, 15].

On August 3, 2020, Defendants filed their answer to the SAC together with a partial motion to dismiss the § 1981 claims. [ECF Nos. 18, 19]. Plaintiff responded to Defendants' motion, but also filed a motion to amend his complaint. [ECF Nos. 22, 23]. On September 28, 2020, the court granted Plaintiff's motion to amend, rendering Defendants' motion to dismiss moot, and Plaintiff's third amended complaint ("TAC") was filed on the docket the same day. [ECF Nos. 31, 32]. In granting Plaintiff's motion, the court noted

2

that Plaintiff's TAC was the fourth complaint he had filed in the span of seven months, all filed prior to September 14, 2020, the deadline established in the scheduling order for motions to amend. [*See* ECF No. 8]. The court further noted the deadline had elapsed, and any future motions to amend the pleadings would be governed by Fed. R. Civ. P. 16(b), which provides the scheduling order "may be modified only for good cause and with the judge's consent." [ECF No. 22 at 11–12].

As relevant here, Plaintiff alleges in his TAC that he is a Mexican-born naturalized citizen and was hired by Tidewater to be a supervisor sometime around January 2017. Plaintiff alleges that he, one other Hispanic supervisor, and their Hispanic crews, were treated differently than their white counterparts, including having to work substantially more hours. Plaintiff alleges that "Defendants engaged in a pattern of discrimination against Plaintiff and their other Hispanic employees because of their race," and "[w]hen Plaintiff complained about the discrimination he was terminated" in May 2018. [*See* ECF No. 32 ¶ 60; *see also id.* ¶¶ 94–95 ("Mr. Duenez's was terminated because he complained to Defendant Correll and Ms. Harsey that the Defendants were engaging in discriminatory conduct against him and the other Hispanic workers. Plaintiff complained to Ms. Harsey that he no longer wished to be engaged in Defendants' illegal hiring practices.")].

3

On February 12, 2021, Defendants filed the instant motion to quash and/or for protective order, requesting an order quashing three Rule 45 subpoenas duces tecum propounded by Plaintiff on the Department of Homeland Security, United States Citizenship and Immigration Services ("DHS"), South Carolina Department of Labor, Licensing, and Regulation, ("SCLLR"), and the South Carolina Department of Public Safety, Immigration Enforcement Unit ("SCDPS"), requesting information about Defendants' hiring and employment practices, particularly regarding the hiring and employment of illegal immigrants and related audits or investigations, and Defendants' use or misuse of the Employment Eligibility Verification ("E-verify") system. [*See* ECF No. 51 at 5–6; *see also* ECF Nos. 51-2, 51-4, 51-5].

Plaintiff did not respond to Defendants' motion, but, on February 17, 2021, he filed another motion to amend his complaint, seeking to add class claims and reassert his previous claim for wrongful termination. [*See* ECF No. 52]. On the same day, the court held informal telephone conference with the parties concerning Defendants' pending motion. [ECF Nos. 53, 54]. On April 6, 2021, the court denied Plaintiff's motion to amend, further directing Plaintiff to file a response to Defendants' motion to quash and/or for protective order. [ECF No. 62].

On April 19, 2021, Plaintiff filed the instant motion for reconsideration of the court's April 6, 2021 order, requesting the court allow him to amend his complaint to reassert a claim for wrongful termination. [ECF No. 63]. The following day, Plaintiff filed an opposition to Defendants' motion to quash and/or for protective order. [ECF No. 64].

II. Discussion

    A.    Plaintiff's Motion for Reconsideration

Motions for reconsideration of interlocutory orders are appropriately granted only in narrow circumstances: (1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice. *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003).

As stated above, on April 6, 2021, the court denied Plaintiff's motion to amend his complaint to add class claims and to reassert a wrongful termination claim. [*See* ECF No. 62].[1] Plaintiff's motion to amend was

---

[1] Under South Carolina law, "[u]nder the 'public policy exception' to the at-will employment doctrine, . . . an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. The public policy exception clearly applies in cases where either: (1) the employer requires the employee to violate the law or (2) the reason for the employee's termination itself is a violation of criminal law." *Barron v. Lab. Finders of S.C.*, 713 S.E.2d 634, 636–37 (S.C. 2011) (citations omitted). However, "[t]he public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination." *Id.* at 637.

5

primarily focused on adding class claims, and Plaintiff only briefly argued that he should be allowed to replead a wrongful termination claim. [ECF No. 61 at 6 (stating the "determination [to not bring this claim] has changed in light of recently obtained information which has shed light on the egregious nature of Defendants' conduct")]. As noted by the court in denying his motion, Plaintiff failed to identify the nature of this newly-discovery evidence as it related to his wrongful termination claim. [*See* ECF No. 62 at 6 n.4].

Plaintiff's instant motion seeks reconsideration of the order denying his motion to amend only as it relates to his wrongful termination claim. [*See* ECF No. 63 at 1]. Plaintiff argues reconsideration is primarily warranted "by the Defendants' shifting litigation tactics." [ECF No. 72 at 3; *see also* ECF No. 63].[2] More specifically, Plaintiff argues as follows:

> In his original complaint, Mr. Duenez brought a WTVPP claim. Plaintiff alleged that when he informed the Defendants he no longer wished to assist them in knowingly hiring undocumented workers he was terminated. Defendants filed a Motion to Dismiss. They argued the WTVPP claim should be dismissed because Plaintiff had alternative statutory remedies for his termination pursuant to both § 1981 and Title VII. Consequently, Plaintiff filed an Amended Complaint that did not include the WTVPP claim . . . .

---

[2] Plaintiff also continues to argue that "through the discovery process and through recently new information provided by former employees of Defendants, Plaintiff has realized the scope of Defendants' misconduct and the importance of bringing this claim and holding Defendants accountable." [ECF No. 63 at 2–3]. However, Plaintiff fails again to identify the newly discovered information or how it relates to his wrongful termination claim.

6

> Plaintiff[] served the Defendants with notice of a third-party subpoena to [SCDHS]. The Defendants filed a Motion to Quash and for a Protective Order, . . . [arguing] the opposite of what they argued in their initial Motion to Dismiss. The Defendants argued, "[t]his case is not about Defendant Tidewater's overall hiring practices." Yet, in their Motion to Dismiss, Defendants argued the factual allegations related to their hiring practices, pertained to Plaintiff's § 1981 and Title VII claims; therefore, his WTVPP claim should be dismissed.
>
> Now in their Motion to Quash, the Defendants argue the factual allegations pertaining to their hiring practices are unrelated to Plaintiff's § 1981 and Title VII claims; therefore, the Court should quash Plaintiff's subpoena to SCDHS. "Details about any audit or investigation (which Defendant Tidewater contends has never happened) has no relevance to whether or not Plaintiff was asked to hire undocumented Hispanic workers while other supervisors were not. That is the only allegation that bears any relation to the hiring practices of Defendant Tidewater." Because of the Defendants flip flopping positions, Plaintiff should be permitted to add back in his claim for WTVPP; otherwise, he will be prejudiced by the Defendants' shifty litigation tactics.

[ECF No. 72 at 1–3 (citations omitted)].

Plaintiff's argument is insufficient for the court to reconsider its previous order denying his motion to amend his complaint five months after the time to do so had expired to reassert a claim for wrongful termination he chose to not pursue. The court's conclusion is not altered by Defendants' arguments that, first, Plaintiff's wrongful termination claim should be dismissed because he has an existing statutory remedy and, second, the information Plaintiff currently seeks from SCDPS, DHS, and SCLLR about Defendants' hiring practices is irrelevant to his Title VII claims.

7

Accordingly, the undersigned denies Plaintiff's motion for reconsideration.

B.   Defendants' Motion for Protective Order

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). Fed. R. Civ. P. 26 governs discovery and provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

However, under Fed. R. Civ. P. 26(c)(1), the court may, for good cause, issue an order protecting a party from "annoyance, embarrassment, oppression, or undue burden or expense" in the discovery process. *See also* Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ."). The

court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Under Fed. R. Civ. P. 26(c), "a party may move for a protective order . . . regardless of whether the moving party is seeking to prevent disclosure of information by a nonparty, as long as the moving party can tie the protected information to an interest listed in the rule." *HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 307–08 (D.S.C. 2013); *see also Kappel v. Garris*, C/A No. 2:19-498-DCN, 2020 WL 707123, at *2 (D.S.C. Feb. 12, 2020) ("[T]he court need not consider whether this rule of law regarding [Rule 45] would apply . . . because [defendant] seeks, in the alternative, a protective order, and courts generally find that a party can seek a protective order for a third party subpoena.") (citing *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012) (holding that a party without standing to quash a nonparty subpoena still has standing to seek a protective order over the documents sought by the subpoena)); *Charleston Equities, Inc. v. Winslett*, C/A No. 3:17-137-JFA, 2018 WL 5778301, at *2 (D.S.C. Jan. 24, 2018) (same).[3]

---

[3] Defendants represent that "[i]n light of the points made during the informal telephone conference held with the court . . ., Defendants have focused their argument in this Reply on their Motion for Protective Order under Rule 26(c), and seek the same remedy that was previously sought under both Rule 45

Defendants argue they are entitled to a protective order because the information sought is (1) irrelevant and overly broad and (2) available through other means. Plaintiff disagrees, arguing the information sought is relevant to his Title VII claims and not available through other avenues in that "Defendants have refused to provide Plaintiff with the requested information, necessitating the subpoenas presently under discussion." [ECF No. 64 at 10].

Turning to the three subpoenas at issue, first, Plaintiff's subpoena to SCDPS seeks the following "items . . . related to investigations of Tidewater Boats, LLC" for the last five years: (1) "photographs, (2) investigative notes, (3) witness statements, (4) documents photographs, electronic files, obtained from Tidewater Boats, LLC," and (5) "any documents providing the outcome of any investigation in [sic] Tidewater Boats, LLC." [ECF 51-4].

---

and Rule 26(c) in the Motion." [ECF No. 71 at 2 n.3]. Additionally, "Defendants maintain that they are entitled to a Protective Order under Rule 26(c) that would either not permit service of the subpoenas (quash them) or would narrow their scope." *Id.* Accordingly, the court also focuses its analysis on Defendants' request grounded in Fed. R. Civ. P. 26(c) and not Fed. R. Civ. P. 45. Plaintiff does not appear to dispute Defendants' standing to seek a protective order pursuant to Fed. R. Civ. P. 26(c). [*See* ECF No. 64]. To the extent Plaintiff does, the court finds here, as in *HDSherer* and *Charleston Equities*, "it is more than likely that the subpoenas will cause a degree of harm to [defendants'] business relationship and is sufficient to satisfy the interest requirement of Rule 26(c)." *Charleston Equities*, 2018 WL 5778301, at *2.

Plaintiff's subpoena to DHS seeks: (1) "Any employee submitted to E-Verify from January 1, 2018 until present," (2) "Any documents submitted to E-Verify that were rejected or flagged," (3) "Any investigation into Tidewater Boats, LLC regarding the employment of illegal immigrants and/or not complying with E-Verify procedures/guidelines," (4) "Any complaints against Tidewater Boats, LLC regarding the employment of illegal immigrants and/or not complying with E-Verify procedures/guidelines," (5) "Any disciplinary action taken against Tidewater Boats, LLC for the hiring of illegal immigrants and/or not complying with E-Verify procedures/guidelines," and (6) "Any account information for Tidewater Boats, LLC's E-Verify account, including, but not limited to, user information, proof of compliance, alerts received as a result of information not matching government records." [ECF No. 51-2].

Plaintiff's subpoena to SCLLR seeks items "related to immigration compliance investigations or audits of Tidewater Boats, LLC": "(1) complaints filed on Tidewater Boats, LLC; (2) the findings of any audits or investigations into Tidewater Boats, LLC; (3) any documents, photos, or digital files gathered during the course of your audit or investigation into Tidewater Boats, LLC; (4) any audio files of transcripts of your interviews with individuals interviewed in the course of any audit or investigation into

Tidewater Boats, LLC; (5) any documentation of Tidewater Boats, LLC failure to comply with 8 U.S.C. Section 1324(a)." [ECF 51-5].

The parties argue at length whether the information sought by Plaintiff is relevant to his Title VII claims. However, the court need not resolve this issue because, as argued by Defendants, the information sought by Plaintiff is available through other avenues, including through discovery requests directed at Defendants and through depositions. [*See* ECF No. 51 at 9; ECF No. 51 at 4 ("Plaintiff also appears to use Rule 45 to circumvent the ordinary civil discovery process—as the requests are duplicative and cumulative of interrogatories and requests for production that that already been served by Plaintiff and answered by Defendants"); ECF No. 71 at 9–10; *see also, e.g., HDSherer*, 292 F.R.D. 305, at 309 ("Despite these findings [of relevance], however, Rule 26(b) commands that this Court limit discovery when the information sought can be obtained from a more convenient source . . . . all of the information sought by Plaintiffs directly concerns Defendant and would be in Defendant's possession . . . . Defendant has not acted in any manner to suggest that it cannot be trusted to provide Plaintiffs with the documents sought in the subpoenas")].

Plaintiff appears to concede the information sought in the subpoenas at issue is also in Defendants' possession, but argues Defendants have refused

to provide the relevant information.[4] In support, Plaintiff offers the following responses to three requests for production propounded by Plaintiff on Defendants:

> 11. All I-9's as well as supporting documentations such as a United States passport; resident alien card, or other photo identification for all employees hired by the Tidewater from January 2017 to May 2018.
>
> Response: Defendant objects to this document request on the grounds that it is overly broad, and unduly burdensome. The request is unduly burdensome as it would require examination of more than approximately three hundred employee's paper personnel files and an immense amount of irrelevant information that has no relation to any claim, defense, or allegation in this Action. Defendant furthers further object to this request because it is disproportionate to the needs of this case and is not reasonably calculated to lead to the discovery of admissible evidence because it seeks a voluminous amount of unnecessary and irrelevant information and documentation.
>
> Subject to and without waiving these objections, see responsive documents for the approximately thirty employees who were hired between January 2017 and May 2018 and who remain employed by Tidewater. Documents are available as bates numbers 00160 to 00260. Defendants may make available for inspection additional responsive documents upon agreement of counsel. Defendant notes that this response is subject to the Confidentiality Order entered in this Action.
>
> 32. All Employment Eligibility Verification ("E-verify") documentation including Form TNG, Employment Eligibility Verification, submitted by Defendants from January 2017 to May 2018.

---

[4] Plaintiff does not address Defendants' argument the information sought could be obtained through depositions. [*See* ECF No. 64].

Response: Defendant objects to this document request on the grounds that it is overly broad and unduly burdensome. The request is unduly burdensome as it would require examination of more than three hundred employee's paper personnel files and an immense amount of information that bears no relation to this Action. It is overly broad because it seeks "all" E-Verify documentation submitted by Defendant for a broad time period, and, such documentation is irrelevant to this Action. Defendant further objects to this request because it is disproportionate and not reasonably calculated to lead to the discovery of admissible evidence because it seeks irrelevant and unnecessary documentation.

Subject to and without waiving these objections, see responsive documents for the thirty employees who were hired between January 2017 and May 2018 and who remain employed by Tidewater. Documents are available at bates numbers 00160 to 00260. Defendants may make available for inspection additional responsive documents upon agreement of counsel.

Defendant reserves the right to supplement this response in accordance with the Federal Rules of Civil Procedure. Defendant notes that this response is subject to the Confidentiality Order entered in this Action.

33. Produce all Tentative Nonconfirmations (TNCs) Defendants received for their employees from January 2017 to May 2018.

Answer: Defendant objects to this document request on the grounds that it is overly broad, unduly burdensome, seeks irrelevant information, is disproportionate to the needs of this case, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, none. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

[ECF No. 71-6 at 9–10, 17–18; *see also* ECF No. 64 at 11–12]. Plaintiff further argues "Defendants' motion was submitted for the purpose of preventing information pertaining to their discriminatory conduct from being brought to light." [ECF No. 64 at 12].

The primary information sought by Plaintiff from SCLLR, SCDPS, and DHS concerns complaints about Defendants, as well as investigations, audits, and related actions taken by these entities against Defendants. The discovery requests and purported inadequate responses above concern I-9s, E-verify documentation, and TNCs. Therefore, for most of the information Plaintiff seeks from SCLLR, SCDPS, and DHS, he has failed to support his argument that "Defendants have refused to provide Plaintiff with the requested information, necessitating the subpoenas presently under discussion." [ECF No. 64 at 10]. Plaintiff does not address Defendants' argument that this information is possessed by Defendants and has been or could be provided. *See, e.g., In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, C/A No. 3:16-MC-1, 2016 WL 1071016, at *8 (E.D. Va. Mar. 17, 2016) ("There is no reason to burden a third party with discovery when the opposing party has all of the information requested.").[5]

---

[5] To the extent Plaintiff argues Defendants have failed to provide the requested information concerning I-9s, E-verify documentation, and TNCs, it is not clear the information Plaintiff sought from Defendants—that Plaintiff argues Defendants refused to provide—is the same or different from the

15

As submitted by Defendants, Plaintiff has indicated at least some of this information has been provided, but Plaintiff seeks to "check" the accuracy of the information submitted for undisclosed reasons. [*See, e.g.*, ECF No. 51-13 at 2 ("As far as Defendants' objections to Plaintiff's subpoenas to SCDPS, DHS, USCIS, and SCLLR that Tidewater has not identified any investigation or violation that has been conducted or cited by these agencies . . . . Plaintiff has reasons to believe that with regard to the responses that were provided, Tidewater has not provided accurate responses."). Although Plaintiff has made accusations about the accuracy of Defendants' discovery responses in briefing and in correspondence between the parties, Plaintiff has failed to offer any support for these accusations. [*See also* ECF No. 51 at 9 ("For example, Plaintiff requested the same information in both Requests to Produce and Interrogatories directed to Defendant Tidewater. Defendant responded truthfully and accurately, and there is therefore nothing to support the subpoenas. Plaintiff's counsel stated multiple times in response to Defendants' objections, albeit with zero support and without stating her reasoning (even when asked specifically for such) that she personally has 'reason to believe that Tidewater has not provided accurate responses' to

---

information Plaintiff sought in the proposed subpoena to DHS, nor has Plaintiff addressed Defendants' argument that all the information sought from DHS could be provided by Defendants or through depositions. [*See* ECF No. 51-2 (seeking Defendants' employees submitted to E-verify, documents rejected or flagged, and "[a]ny account information" for Defendants)].

Plaintiff's discovery requests. There is no support for such a false claim by Plaintiff.") (citations omitted)].

A review of Defendants' responses do not support Plaintiff's argument that they have engaged in obstructive behavior. Additionally, Defendants represent that notwithstanding their representations that "Defendants may make available for inspection additional responsive documents upon agreement of counsel," Plaintiff's counsel "never reached out or requested the ability to inspect the documents" nor ever "offered to narrow the scope of the subpoena requests." [ECF No. 71 at 1, 8]. Finally, to the extent Plaintiff argues Defendants' above responses do not provide all of the information he sought, as also sought in the subpoenas at issue, the court agrees with Defendants that the information sought is overly broad, where Plaintiff seeks "any" and "all" documents and information for extensive time periods.[6]

Plaintiff requests that "if the Court finds good cause for a protective order we ask that the court limit the parameters of the subpoena rather than quashing the subpoena in its entirety." [ECF No. 64 at 13]. However, because Plaintiff has not specifically addressed the information sought that cannot be

---

[6] Defendants have also indicated to the court that additional discovery disputes are occurring. [*See* ECF No. 51 at 1 n.1, ECF No. 71 at 1 n.2, ECF No. 71 at 9 n.6]. To the extent these disputes are not addressed in this order and are ongoing, the parties can file the appropriate motion.

procured from Defendants directly or how the subpoenas could be limited, the court finds quashing the subpoenas in their entirety to be appropriate.

III.   Conclusion

For the foregoing reasons, Plaintiff's motion for reconsideration is denied. [ECF No. 63]. Defendants' motion to quash and/or for protective order is granted, and Plaintiff's subpoenas to DHS, SCDPS, and SCLLR are quashed in their entirety. [ECF No. 51].

IT IS SO ORDERED.

May 14, 2021                                                   Shiva V. Hodges
Columbia, South Carolina                               United States Magistrate Judge